Littleton, Judge,
delivered the opinion of the court:
The pertinent provisions of Paragraphs 1 and 2 (a) of the Land-grant Equalization Agreement are set forth in finding 2. The dispute concerns only the selection of land-grant routes for the purpose of determining the proper freight «charges' to the defendant under the terms of this agreement for government shipments made over plaintiff’s lines and • its connections. Plaintiff was not a land-grant railroad and it was for this reason that it entered into the equalization ¡agreement referred to. The question in issue is, did the agreement between the parties provide for or require freight -charges to the government for transportation of the shipments of government property over the actual routes of movement based upon lawful rates on file with the Interstate Commerce Commission, less deductions for land-grant over the land-aided or land-grant routes affording the lowest net rates, or on some other basis.
*194 The parties stipulate that “The sole issue presented in the first cause oí action involves the determination of an available land-aided route south of Cairo, Ill., in accordance with-the terms of the plaintiff’s freight land-grant equalization agreement, for the purpose of establishing in pertinent part charges for transporting the shipments, listed in said Exhibit 4 to the petition, over the actual routes of movement.” As-to the second cause of action, the parties stipulate that “There-is no controversy respecting the amount of the commercial rates used by the plaintiff and the defendant, nor is there any dispute as to the fact that the net amounts indicated by the defendant as properly payable have been computed correctly over the land-aided routes used by the defendant as a basis for such payments. The sole issue is the selection of an available land-aided route, if any, in accordance with the terms-of the plaintiff’s freight land-grant equalization agreement,., for the purpose of establishing charges for transporting the shipments, listed in Exhibit 8 (to the petition), over the actual routes of movement.”
The third cause of action has been settled by stipulation and presents no controversy. See Finding 24.
The provision of the agreement in question seems plain enough without resort to construction when it is interpreted according to the ordinary signification of the language used, but plaintiff contends that under a proper construction of the agreement based on what it contends was the intention of the parties, it agreed only to equalize net freight rates computed via competitive routes, that is, routes which are in fact competitive in the ordinary commercial sense, and that it did not agree and is not required to equalize to the government net rates computed in each case via the land-grant route from point of origin to destination in fact producing the lowest net rate, regardless of whether such route is in fact commercially competitive and regardless of how circuitous and impractical it may be. In addition plaintiff asks the court to define the term “competitive routes.” The unambiguous language of the equalization agreement expresses the final intention of the parties as to the routes and rates and the legal import of such language is opposed.to plaintiff’s contention.. Simply stated, the plaintiff by Paragraph 1 of the equali *195 zation agreement stipulated without qualification or exception to accept for the transportation of government property the lowest net rates lawfully available over land-aided routes. By its express terms the agreement prescribed this measure of reduced commercial tariff rates to the equalizing carrier as the basis for computing freight charges for the transportation of government property over the actual route of movement. Except as reflected in the adjustments in defendant’s counterclaim, the net freight charges due plaintiff were computed by defendant over land-grant routes' lawfully available. The land-grant routes so selected and used for computation of rates by defendant under lawful tariffs on file with the Interstate Commerce Commission were admittedly available to the commercial public and to-the government and could have been used for the making of all of the shipments in question. Beyond this the equalization agreement is silent as to the extent to which the land-grant routes to be selected must be commercially competitive or practical or as to the extent or limit of circuity of the land-aided routes which may be used to determine “the lowest net rates lawfully available.” Paragraph 2 of the agreement provided for exceptions and none that is pertinent here was made. It is not for the court to supply by construction the exceptions and limitations for which plaintiff contends when the agreement as written by clear and definite language specified, with-* out qualification or restriction, the basis for determining the-extent of the government’s obligation for services rendered thereunder. Plaintiff seeks by construction to engraft upon the language of the contract a term or condition, i. e. “via competitive routes,” which is not expressly or by necessary implication included therein. Compare Louisville Nashville R. R. v. United States, 61 C. Cls. 1, in which the agreement provided for land-grant deductions “via the longest land-grant mileage * * * over usually traveled routes.” With reference to competition and circuity of routing as to which the plaintiff’s agreement is silent, it should be pointed out that a route which is competitive for commercial traffic may or may not be competitive for government traffic which is subject to reduced rates over lawfully available land-grant routes. In the transportation of government property the *196 ■cqilipetition for it is between the non-land-grant or equaliza/tion agreement carriers. A land-grant route which the government might regard as entirely adequate for shipment of its property might not be regarded as a practical route over which commercial shippers not entitled to freight rate reductions ordinarily would elect to make their shipments. However, circuity routing is a well known factor in connection with transportation rates and is favored by carriers to secure traffic and by shippers to meet particular situations. These matters were well known to the parties when the equalization agreement was made, and they knew also that, ac■cording to custom, there was no mileage or distance limitation in any of the tariffs which fixed routes and- rates lawfully available to the government as well as to the public, and they made none in the equalization agreement. Neither -did the equalization agreement make any reference to the allowable percentage of circuity from point of origin to destination in determining deductions on account of land-grant ■distances. Under the agreement the lowest net rate lawfully ■available as derived through land-grant deductions is not ■conditioned in any case upon the character of the property -shipped. The formula for determining the freight rate which plaintiff agreed to accept is definitely set forth whether ■the property shipped be cattle or steel.
It would appear from the Regulations of the Quartermaster General, U. S. Army, issued in 1916 and existing at the time the agreement in question was made (see also Act of July 5, 1884, 23 Stat. 107, 111), that any general or special limitation or qualification such as that for which plaintiff now contends was purposely left out of plaintiff’s stipulation “to accept the lowest net rates lawfully available” to the Government over available land-grant routes. Those Regulations (Manual for the Quartermaster Corps, U. S. Army, 1916, App. No. 9, Vol. 2, p. 223; Quartermaster General Circular No. 15, May 18, 1922), provided in part as follows:
Particular attention is invited to the special exceptions of certain carriers to both passenger and freight agreements. Where these special exceptions provide that the carriers shown in the margin will not equalize *197 the lowest net rates available on certain specified traffic,, such traffic should not be forwarded via the carriers, shown, unless no other route is available. Where special, exceptions provide that lowest available rate will not. be protected via certain routes, such routes should not be used.
We cannot amend the agreement which the parties themselves elected to make, by undertaking to prescribe qualifications as to distance or percentage of circuity of available' land-grant routes. As written, the equalization agreement, is easily understood and simple of administration, and the language used discloses that this was intended as one of the-main objects of the agreement, whereas the construction for which plaintiff contends would unavoidably result in uncertainty, confusion, and constant controversy, as the facts in this case so clearly demonstrate. In between the routes used' by defendant and the routes used by plaintiff, there are many alternative routes. Which shall be chosen if we depart from the clear and definite language of the equalization agreement which gives the government “the lowest net rates lawfully available * * * from point of origin to destination at. time of movement”? The answer as to what other routes, should be used can not be found in the equalization agreement and is impossible on the record as it stands, and probably never could be arrived at, either administratively or' judicially, with any degree of satisfaction without a detailed and expert inquiry into each case and the adoption of an arbitrary allowable percentage of circuity. We can find no* justification or authority in the language or intention of the agreement for the selection by the court of some intermediate available route which produces a higher net freight rate to' plaintiff than the “lowest net rate lawfully available, as derived through deductions account of land-grant distance from the lawful rates filed with the Interstate Commerce-Commission applying from point of origin to destination.”' Any question as to whether it is unfair and unreasonable to require plaintiff to equalize net charges computed at lawful tariff rates via the land-grant routes used by defendant is foreclosed by the tariffs lawfully on file with the Interstate Commerce Commission. The question of reasonableness of *198 tariff rates and routes is one over which this court has no jurisdiction. It has been committed by Congress to the Interstate Commerce Commission.
Under the equalization agreement and the routing instructions of the applicable lawful tariffs the defendant has, as •shown by the findings, overpaid plaintiff a total of $1,688.56 •on certain items of shipments and underpaid it a total of ‘$386.83 on other items, or a net overpayment of $1,251.73, for which counterclaim is made. See findings 11, 13, and 24.
The amount of $386.83 which plaintiff is entitled to receive is less than the amount of the overpayment to it for which the defendant is entitled to recover $1,638.56 on its counterclaim. Judgment will therefore be entered in favor of the defendant for the difference of $1,251.73. It is so •ordered.
Madden, Judge; Whxtaeer, Judge; and Whaley, Chief •iJustice, concur.
Jones, Judge, took no part in the decision of this case.